.In re **MIDWAY INDUSTRIAL CONTRACTORS, INC.,** Debtor.

**Bankruptcy No. 92 B 13149.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

April 15, 1994.

Walter E. Trittipo, John A. Cook, Hough & Cook, Chicago, IL, for debtor.

Pam S. Hollis, Hollis & Johnson, Chicago, IL, for creditor.

Victoria S. Crosley, Asst. Dist. Counsel, I.R.S., Chicago, IL, for I.R.S.

## MEMORANDUM DECISION

SUSAN PIERSON SONDERBY,
Bankruptcy Judge.

This matter comes before the Court on the Debtor's Motion to Enforce the Automatic Stay of Proceedings by Rule to Show Cause and the United States Motion for Relief from the Automatic Stay. After reviewing the papers, the relevant case law, and taking into consideration the arguments of counsel, the Court grants the request of the United States for relief from the automatic stay, but awards the Debtor reasonable attorneys' fees and costs incurred in connection with the filing of its motion.

### JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G), and (O).

### BACKGROUND

The relevant facts in this matter are not in dispute. Midway Industrial Contractors, Inc. ("Debtor") is an industrial painting contractor which employs individuals from whose salaries federal taxes are withheld and transmitted to the Internal Revenue Service ("IRS"). The Debtor was required and did deposit a total of $543,838.51 for employees' withholding and the employer's portion of federal taxes for the fourth quarter 1991. Some of those deposits, however, were not timely made. As a result, the IRS assessed a penalty of $41,305.61 against the Debtor on

or about March 23, 1992. That assessment was subsequently reduced to $17,554.31.

On June 11, 1992, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. On December 30, 1992, the Debtor elected to carryback to the 1988 tax year the net operating losses incurred during the tax year ending December 31, 1991 and filed an Application for Tentative Refund ("Application") of $40,320 due to the loss carryback. On February 8, 1993, the IRS granted the Application, but did not immediately make any payment.

On June 1, 1993, the IRS filed a proof of claim asserting a secured claim in the amount of $17,292.04 [1] as a result of the IRS's alleged setoff rights for the assessed penalty amount. On June 15, 1993, the IRS issued a check to the Debtor for the $40,320 (plus interest) less $17,382.04,[2] the amount of the IRS's alleged claim. On or about July 15, 1993, in response to the IRS withholding $17,382.04, the Debtor filed a motion to enforce the automatic stay by a rule to show cause why the IRS should not be held in contempt. Subsequently, the IRS filed a motion for relief from the automatic stay so that the IRS could proceed to credit the amount of $17,382.04 to the Debtor's tax liability.

### DISCUSSION

The issue in this matter involves a balancing of the provisions of the Bankruptcy Code and the Internal Revenue Code and requires a finding of the time when a setoff occurs within the meaning of these two bodies of law. Sections 6402(a) and 6411(b) of the Internal Revenue Code, expressly permit offset,[3] and Section 553 of the Bankruptcy Code

---

1. It is not clear from the parties' papers or from the IRS's proof of claim why the Debtor's reduced assessment was $17,554.31, but the IRS filed a claim in the amount of $17,292.04.

2. Again the record is not clear why there is a difference between the amount withheld by the IRS, and the amount of the reduced assessment or the amount in the proof of claim.

3. 26 U.S.C. § 6402(a) provides:
   In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against

any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall ... refund any balance to such person.
26 U.S.C. § 6411(b) provides:
Allowance of adjustments.—Within a period of 90 days from the date on which an application for a tentative carryback adjustment is filed ... the Secretary shall make, to the extent he deems practicable in such period, a limited examination of the application, to discover omissions and errors of computation therein, and shall determine the amount of the decrease in the tax attributable to such carryback upon the basis of the application and the ex-

preserves that right,[4] limited by the automatic stay provisions of Section 362.[5]

The policy behind Section 553 recognizes the inequity where debts are owed between a debtor and a creditor of allowing the debtor to collect all the debt owed to him while disallowing recognition of the debtor's liability to the creditor. Additionally, Section 506 allows a creditor with a right of setoff to be treated as a secured creditor to the extent of the setoff for purposes of the Bankruptcy Code. 11 U.S.C. § 506(a).[6] The creditor's right to offset, however, is not absolute, it must be balanced against the debtor's right to relief from the demands of creditors through the protection of the automatic stay. The setoff of any pre-petition debt owing to a debtor against any claim against the debtor is absolutely prohibited by the automatic stay. 11 U.S.C. § 362(a)(7); *In re Cross Keys Motors, Inc.*, 19 B.R. 976, 977 (Bankr. M.D.Pa.1982).

### 1. *IRS's right to setoff*

■ In order for the IRS to establish a right to a setoff under Section 553, three requirements must be met: first, a debt owed by the IRS to the Debtor which arose before the commencement of the bankruptcy case, second, a claim of the IRS against the Debtor which arose before the commencement of the bankruptcy case, and third, the debt and the claim must be mutual obligations. *Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1035 (5th Cir.1987); *In re Brooks Farms*, 70 B.R. 368, 371 (Bankr.E.D.Wis.1987).

■ The fulfillment of the first requirement is the most contested. The Debtor argues that the IRS's debt to the Debtor arose post-petition because the Debtor's right to the carryback amount did not exist until after the IRS approved the Application. The IRS contends the IRS's debt arose pre-petition and relies on the Supreme Court holding in *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). In *Segal*, the debtor applied for a loss carryback tax refund post-petition, for losses that were incurred prior to the bankruptcy filing. 382 U.S. at 376, 86 S.Ct. at 513. The debtor argued that he, and not the estate, was entitled to the refund because the property was acquired post-petition. Examining Section 70(a) of the Bankruptcy Act, the Supreme Court found that "property" encompassed inchoate rights which existed prior to the bankruptcy filing and were transferable as of the petition date even though attributable to a net operating loss for a taxable year which closed post-petition. *Id.* at 379–80, 86 S.Ct.

amination, except that the Secretary may disallow, without further action, any application which he finds contains errors of computation which he deems cannot be corrected by him within such 90–day period or material omissions. Such decrease shall be applied against any unpaid amount of the tax decreased (including any amount of such tax as to which an extension of time under section 6164 is in effect) and any remainder shall be credited against any unsatisfied amount of any tax for the taxable year immediately preceding the taxable year of the net operating loss, net capital loss, or unused business credit the time for payment of which tax is extended under section 6164. Any remainder shall, within such 90–day period, be either credited against any tax or installment thereof then due from the taxpayer, or refunded to the taxpayer.

4. 11 U.S.C. § 553 states in relevant part:
   (a) Except as otherwise provided in this section and sections 362 and 363 of this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such

creditor against the debtor that arose before the commencement of the case ...

5. 11 U.S.C. § 362 states in relevant part:
   (a) ... a petition filed under section 301, 302, 303 of this title ... operates as a stay, applicable to all entities, of—

   *       *       *       *       *       *

   (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor ...

6. 11 U.S.C. § 506(a) states in relevant part:
   An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim.

at 515. The *Segal* court found that "postponed enjoyment does not disqualify an interest as 'property.'" *Id.* at 380, 86 S.Ct. at 515. Therefore, although the claim was filed post-petition, the tax refund was a debt which arose pre-petition in favor of the taxpayer, and consequently the title was vested in the estate. *Id.*

Applying a similar analysis in this case, it is clear that the Debtor is confusing the time when its right to the carryback amount arose. The right to the carryback arose pre-petition and the Debtor only had to satisfy the requisite procedural requirements to secure the amount owed it. 26 U.S.C. § 6411 and 26 U.S.C. § 6511. The Debtor cannot choose to wait until after the filing of bankruptcy, a potentially more opportune time, to exercise its claim and then argue that the IRS is barred from setting off its debt. If this were allowed, the setoff provisions of the Bankruptcy Code would be circumvented. Such a manipulation of the bankruptcy process has not been permitted in other courts and will not be permitted in this matter. *In re Rozel Industries, Inc.*, 120 B.R. 944 (Bankr.N.D.Ill.1990); *In re W.L. Jackson Mfg. Co.*, 50 B.R. 506 (Bankr.E.D.Tenn.1985); *In re Mason*, 79 B.R. 786 (Bankr.N.D.Ill. 1987). Specifically, in this case, the Debtor's claim arose at the end of the 1991 tax year because that is the year in which the refund relates. Consequently, the amount owed the Debtor by the IRS arose prior to the commencement of the case.

■■■ The last two requirements of setoff are also met in this case. The claim of the IRS against the Debtor arose when the Debtor failed to pay its withholding taxes, which was prior to the Debtor's commencement of this bankruptcy case. Therefore, the second requirement for a setoff was met. Lastly, courts interpret mutuality to require the existence of liability between the same parties, standing in the same capacity. *In re NTG Industries, Inc.*, 103 B.R. 195, 197 (Bankr.N.D.Ill.1989); *Matter of Martin*, 130 B.R. 930, 940 (Bankr.N.D.Ill.1991). Mutuality is met in this case because both the claim of the IRS and the claim of the Debtor arose pre-petition between the same parties. Therefore, the IRS satisfied the required

elements to effectuate a setoff. Having decided that the IRS is entitled to setoff its claim, the Court turns to the question of whether the IRS has already exercised that right.

### 2. *Time of setoff*

■■■ Section 362(a)(7) prohibits a creditor from exercising a right of setoff after a petition is filed, without modification of the automatic stay. *In re Patterson*, 125 B.R. 40, 51 (Bankr.N.D.Ala.1990). The IRS maintains that by withholding the funds, it has not violated the automatic stay but rather has frozen the Debtor's account to preserve its setoff rights against the Debtor. The IRS fails to recognize its own statutory duties and its own inaction in failing to respond to the Debtor within the required 90 days pursuant to 26 U.S.C. § 6411(b). Therefore, the Court finds that the IRS demonstrated an intent to setoff when it failed to respond to the Debtor's application for tentative loss carryback.

The Court finds persuasive the holdings in *United States v. Norton*, 717 F.2d 767 (3d Cir.1983), and *United States v. Reynolds*, 764 F.2d 1004 (4th Cir.1985), two cases which have considered similar issues. In *Norton*, the Third Circuit rejected the IRS's administrative freeze argument when the IRS setoff a debtor's tax refund against pre-petition taxes in violation of the automatic stay. In addition to analyzing Pennsylvania law to determine when a setoff occurs, the court reasoned that the IRS's intent to setoff was clear by its retention of funds. Additionally, the *Norton* court determined that:

> Nothing in the Bankruptcy Code or its legislative history indicates that the Congress intended 'a special exception for the tax collector' to the general principles governing Section 553.

*United States v. Norton*, 717 F.2d at 772–773 citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

In *United States v. Reynolds*, after the debtor filed a tax return and claimed a refund from the taxable year, the IRS paid the debtor a portion of the refund, and retained a

portion of the refund. Citing *Norton,* the court found it impermissible to "freeze" the debtor's accounts until the case was closed or some action was taken. The court recognized that the determination of a creditor's *setoff* rights is key for the debtor's chances of a successful rehabilitation. *United States v. Reynolds,* 764 F.2d at 1007.

The same rationale applies to this matter. Pursuant to 26 U.S.C. § 6411(b) of the Internal Revenue Code, within 90 days of the Debtor filing the application for tentative carryback adjustment, the IRS was to make a "limited examination" of the Application. During the 90 days, the IRS must credit or refund any amount due the Debtor. 26 U.S.C. § 6411(b). In this case, although the IRS notified the Debtor that an overpayment [7] was made, it did not indicate whether it would *either* credit any remainder of the tax decrease found or refund it to the taxpayer. Although the plain language of the statute does not provide that outside the 90 days, the amount shall be automatically refunded, *Thrif–Tee, Inc. v. United States,* 492 F.Supp. 530, 534 (W.D.N.C.1979); *see Steiner v. Nelson,* 309 F.2d 19, 21 (7th Cir.1962), it does require the IRS to make a determination. 26 U.S.C. § 6411 does not address the consequences when no determination is made by the IRS and the individual has filed for bankruptcy protection and is entitled to the protection of the automatic stay. The IRS cannot circumvent the automatic stay simply by postponing the entry of a credit on its books. *United States v. Norton,* 717 F.2d at 773. The Court finds that the setoff occurred when the IRS failed to adhere to its statutory duties as outlined in 26 U.S.C. § 6411(b). *Rozel,* 120 B.R. at 948. In other words, 90 days after the Debtor filed the Application. *Id.* Therefore, the IRS's retention of the Debtor's overpayment is deemed to have constituted an automatic setoff and was in violation of the automatic stay. *Id.* at 954; *United States v. Reynolds,* 764 F.2d at 1007.

The IRS argues that since the Debtor was in bankruptcy it was prohibited from making any credit of its claim against the Debtor, and therefore had not exercised its discretionary powers citing *In re Pettibone Corp.,* 151 B.R. 156 (Bankr.N.D.Ill.1992). The *Pettibone* case is distinguishable from the case at hand because the facts in that case did not require the court to make a determination of a violation of the automatic stay due to the IRS's inaction. As noted above, the IRS manifested its intent to setoff the Debtor's overpayment by failing to make a decision to credit the amount of overpayment or issue a refund.

■ The Debtor contends that the overpayment can only be used to offset tax due, not penalty and interest. Pursuant to 26 U.S.C. § 6411(b), the IRS may credit against "any unsatisfied amount of any tax." Section 6402 of the Internal Revenue Code is the general provision for crediting an overpayment against taxes, and provides that an overpayment may be credited against any outstanding liability for any tax which would include amounts due for interest, and penalties. 26 U.S.C. § 6402(a); Treas.Reg. § 301.6402–3(6). Therefore, pursuant to Section 6411(b) this "unsatisfied amount" would necessarily include penalties, and interest due from the taxpayer.

■ In summary, the IRS's purported offset was in violation of the automatic stay, and ineffectual. However, the Court does not find this is sufficient reason to deny the modification of the stay. *See In re Conti,* 50 B.R. 142 (Bankr.E.D.Va.1985). The Court finds that since the IRS is a secured creditor and is not adequately protected, there is just cause to modify the stay to permit the IRS to *setoff the amount of its debt against the amount due the Debtor.*

3. *Damages for Violation of the Automatic Stay*

■ The remaining issue before this Court is whether the IRS should be sanctioned for its violation of the automatic stay.[8] Section 362(h) states:

---

7. An "overpayment" of taxes is a payment made by the taxpayer which is greater than the tax liability. A "refund" is an obligation of the IRS to pay the overpayment. *In re Pettibone Corp.,*

151 B.R. 156, 163 (Bankr.N.D.Ill.1992); 26 U.S.C. § 6402(a).

8. In addition to a request for attorneys fees and costs for filing its motion, the Debtor seeks a rule

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h). A willful violation of the automatic stay does not require a specific intent to violate the stay. *In re Bloom*, 875 F.2d 224, 227 (9th Cir.1989). Rather, if the creditor knew of the automatic stay and the creditor's actions which violated the stay were intentional than an award of damages is warranted. *Id.* The IRS's good faith belief that it had a right to the property is not pertinent to whether the act was "willful" or whether compensation should be awarded. *Id.* Consequently, the Court finds that the IRS's retention of potential funds of the estate was willful. The IRS was aware of the Debtor's bankruptcy by at least June 1, 1993, when it filed a proof of claim in the Debtor's bankruptcy case. However, at that time, the IRS failed to file a motion to modify the stay in order to effectuate its setoff. The IRS was keenly aware of protecting its own rights in the bankruptcy process, but failed to take into account the rights of the Debtor.

Furthermore, the IRS admitted in oral arguments before this Court that it should have filed its motion to modify the stay earlier. We can accept the setoff of the Debtor's overpayment, but we cannot condone government inactivity which though "bureaucratic streamlining burdens the debtor and the bankruptcy court." *Harbaugh v. United States*, 1989 WL 139254, at *4 (W.D.Pa.). The IRS's inaction is particularly ironic in this case because the IRS penalized the Debtor for failure to make timely deposits, yet failed to make any timely decision concerning the Debtor's potential tax refund as is mandated by 26 U.S.C. § 6411(b). Therefore, the Court finds that the Debtor should be compensated for its attorneys' fees and

costs in bringing the Motion to Enforce the Automatic Stay because those were the actual damages incurred by the Debtor due to the IRS's violation.

■ Because of the IRS's blanket denial of its violation of the automatic stay, the IRS does not address the Debtor's request for attorneys' fees and costs. Despite this, the Court finds that Section 106(a) [9] waives the government's immunity to allow this Court to sanction the IRS pursuant to Section 362(h). *See Taborski v. United States*, 141 B.R. 959, 964 (N.D.Ill.1992); *In re Bulson*, 117 B.R. 537, 540 (9th Cir. BAP 1990). In *Taborski*, the district court affirmed the bankruptcy court's decision to waive the United States' sovereign immunity for violating the automatic stay for withholding the Debtor's refund. The *Taborski* court outlined a three-part test for recovery from a governmental unit which if met exposes the IRS to liability:

1. the governmental unit has a claim against the estate;

2. the debtor's claim against the governmental unit is property of the estate;

3. both claims arose from the same transaction or occurrence.

*Taborski*, 141 B.R. at 964. Applying this test to the facts of this case, the Court finds that all three requirements are met.

First, the IRS filed a proof of claim on June 1, 1993. Second, the Debtor's claim for attorneys' fees and costs is considered property of the estate since the estate acquired the claim after the commencement of the case. *See* 11 U.S.C. § 541(a)(7); *In re Price*, 130 B.R. 259, 270 (N.D.Ill.1991) *citing United States v. McPeck*, 910 F.2d 509, 512 n. 7 (8th Cir.1990). Third, both claims arise out of the same transaction or occurrence because the Debtor's claim for attorneys' fees and costs is proximately linked to the IRS's actions of setting off the amount owed to the Debtor. *Taborski*, 141 B.R. at 964.

---

to show cause why the Debtor should not be held in contempt. The Court will treat this as a request for sanctions pursuant to 362(h). Contempt proceedings are governed by Fed.R.Bankr. 9020, and not by a "rule to show cause" request. *In re Crooks*, 148 B.R. 867, 873 (Bankr.N.D.Ill. 1993); *In re Torres*, 117 B.R. 379, 387 (Bankr. N.D.Ill.1990).

9. Section 106(a) provides:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose. 11 U.S.C. § 106(a).

**146**

## CONCLUSION

The IRS's motion to modify the stay is granted. The automatic stay is lifted so that the United States of America, acting through the Internal Revenue Service, may setoff its claim for pre-petition taxes in the amount of $17,292.04 against the pre-petition sum owed to the Debtor in the amount of $17,382.04. To the extent that the amount withheld exceeds the pre-petition tax debt, the IRS shall pay the excess to the Debtor.[10]

The Debtor's Motion to Enforce the Automatic Stay is granted in part and denied in part. The Debtor's request to enforce the automatic stay is denied, but the Court will grant the Debtor the amount of reasonable attorneys' fees and costs incurred concerning the filing of the Debtor's Motion to Enforce the Stay. The Court will enter an order separately this day setting a briefing schedule on the application for attorneys' fees and costs concerning the filing of the Debtor's motion.

David A. Virgin, Bethalto, IL, for appellants.

---

10. Neither party raised the issue of interest and the Court does not address it here.